Case number 24-1277 et al. Encor Electric Delivery Company LLC v. National Labor Relations Court, Ms. Rogers for the petitioner, Ms. Sheehy for the respondent, and Mr. Gillespie for the interviewer. Good morning, counsel. Ms. Rogers, please proceed when you're ready. May it please the court. My name is Amber Rogers, and I represent Encor Electric Delivery. I'd like to reserve three minutes for rebuttal. The record in this case is devoid of any evidence, let alone substantial evidence, that Mr. Reed said anything to the Texas Senate Business and Commerce Committee, the media that was present, or the members of the public that indicated that the union and Encor were engaged in an ongoing labor dispute. In fact, there was no labor dispute, and this ends the analysis under Jefferson standard and requires that the board's decision be vacated. Importantly, on remand, the board got this correct and concluded that it was the general counsel's burden to establish this first prong, and in this case, it totally failed. It's worth noting five critical findings that are from Encor 1, in this case, in the decision from 2018. So, Judge Williams' writing for the court made or noted five critical findings that foreclose almost all of the board's arguments in this case. First, Judge Williams wrote that Mr. Reed never disclosed that his testimony was an attempt to gain any leverage in bargaining. Second, that the record gives very little indication of significant lobbying on smart meters in the years before Mr. Reed's testimony. Judge Williams noted that, stating that the email that was sent was sent to a different committee from the one that Mr. Reed testified before that day, in regards to a bill that was no longer pending when he testified, and then also the emails that have been referenced as some sort of contextual background, allegedly, for his comments that day. But that email actually contained no overt nexus to any employee interest. Third, while the union opposed smart meters, largely related to automation issues that threatened to decline in the workforce, that that was actually not a topic of Mr. Reed's testimony before the Texas Senate. Fourth, that Mr. Reed's testimony made no mention of worker hazards and made no detectable reference to worker risk. And then fifth, that so far as collective bargaining was concerned, smart meters were not an issue. So, these are five critical findings that are the law of the case, and the board, despite continuing to argue against them, can't change what this court decided in Encore 1. Ms. Rodgers, do you think it's fair to say that Encore 1 required the board on remand to introduce some new evidence to meet the first prong of Jefferson's standard? I think that's correct, Judge Rao, and it didn't because there is no evidence. There was nothing new that they could. I think they came up with some somewhat creative ways to try to recast the prior evidence. But the reality is, Mr. Reed, we don't have to guess at what he said. It's in the record. He said what he said, and the law requires under Jefferson's standard that that communication indicate to the third parties that there was some ongoing dispute. So, there is no new evidence and, you know, there was none that they cited or relied on. The remand was for the board to articulate principles, right? There were principles for affording protection to employees disparaging, disparaging appeals to third parties. So, we didn't say you had to come up with some more evidence. No, I think the court gave some indications that if what you were relying on is, for instance, the leverage point that the court noted in Encore 1, then you need to come up with some intelligible lines about how, when a person says something like Mr. Reed did, that is seemingly disparaging. How does that statement let third parties know that there is an ongoing labor dispute if there's not more to it? And I think the court then went on and gave a sentence about it would be unfair to let unions fly so close to the sun, I think, with making such statements. So, I think the point was, though, and that was the next point I was going to make, Judge Millett, is this court did tell the board to draw some intelligible lines along, you know, if you're going to say that a statement like this somehow that clearly doesn't reference an ongoing labor dispute does, what are those lines? And I don't think one can leave having read the board's decision and know what are those intelligible lines. I mentioned that, but the point of the remand, I mean, it can't be that our opinion foreclosed a contrary ruling by the board on remand. So, we, you know, send it back for them to apply their expertise to this record. And I understand how your argument is, and they didn't do it. But that's different from suggesting that what we said there really preordained or required a specific. No, I think that's right. I don't think this court dictated an outcome, because you're correct. If you had, there would have been no reason to send it back to the board in the first place seven, eight years ago. I just think the court made some findings that the board can't get away from, which relate to things that Mr. Reed did not say. You know, so there's a lot of discussion in the board's opinion about worker safety being an issue. And, you know, I believe the law of the cases, it's not. He said, you know, if we read his testimony, he did not say that. There's nothing in there about. If we take the underlying facts apart from what he said, put aside what he said. But if we take the underlying facts as a given in terms of what were the parties in discussions about? What were the kind of legislative proposals that were in play in previous cycles and things like that? Is there anything that he could have said, in your view, that would have satisfied prong one? Sure, sure. Yeah, I think. So what would he have said? Yeah, no, I think that's a great question. I think Mr. Reed could have said. What I think the court noted was his purpose, right? Was was to gain leverage. He just didn't disclose that. And because of that reason, it's not protected. So I think he could have started off with while he did. My name is Mr. Reed or Bobby Reed. I work for Encore. I'm a 34 year employee. We were negotiating yesterday and we're in a fight about wages. Two seconds. And that would have disclosed that they are. Excuse me, that the union was in a dispute, an ongoing dispute with Encore about a in a labor dispute. And then put the listeners on notice of that so that they're able to critically filter what he says.  So what he talks about, then, even though what he talks about is about the safety of the smart meters. It doesn't that it doesn't have necessarily in your mind have to do. With the subject of what the discussions between the union and the employer might have been, if he starts out and he says, I'm a union member, which he did. And then he says, and we're having discussions about wages, and I want to talk about the safety of the equipment that we have. That doesn't itself have any necessary nexus to wages, but you think if he discloses that he's in discussions with them. On behalf of union on wages, but then he goes on to talk about the safety of equipment. Then it's enough that the audience could say, okay, they're in a dispute about wages. I can't think immediately why that has to do with the safety of the equipment. I'm sure you can construct some economic sequence of events where it actually has a feedback loop, but I'm just not correct. So, I'm just going to think about these 2 things is kind of being unrelated, but he's going to disparage the safety of the product. And I'm still going to filter it in a particular way, because they're in discussions about something that's totally different about wages. Well, I would have been you think that would have been brought within apologies for interrupting your honor. I don't think it's just disclosing a topic that is a term and condition of employment. The dispute is the key is are you because again, I could say something today, right? That is very much related to a term and condition of my employment that, hey, your honors, I read a lot of cases to get prepared for today. You don't walk away from that knowing am I in a dispute with hunting about anything? I'm not, but if you do reveal that we're not just in negotiations, but we're in a fight in negotiations, we want increase in wages. They don't we want safety of smart meters. They don't and you think that's enough as long as there's a dispute about something. It doesn't matter if it's related to the subject of the of the testimony or the appeal to the, because the idea behind Jefferson standards, I understood it. And then mountain shadows is that the statement makes an appeal to whoever the audience is to get help with respect to the dispute. But if you're talking about something that doesn't have anything to do with the dispute. Then it's not entirely clear to me why noting that there's an ongoing dispute and then saying, we're in a dispute about wages. And then you say, oh, and by the way, I want to talk about the safety of the equipment. This equipment is horrendous. And why would that get the audience to help you with respect to wages? No, and I do think the case on I'm trying to recall the name of the case right now, but that it does need to be tied to. Like, to the related to the dispute, it's not just just saying anything, some argument that you're having, but here, I mean, again, I think it would be attenuated, but you could at least get to. We're in an argument about wages, because we don't have enough people working on smart meters and say, I mean, you could again, sort of a loop. I was just curious about your position, but if he had done something, it may be that you don't need it because you can you can disparage the employer in a way that's going to inure to your detriment with respect to whatever you're negotiating with them about. But if he had said, I'm here in my capacity as an employee and as a union member, and I can just tell you that we're worried. We are trouble men, we trouble men are worried because these meters catch on fire. And when we go on site, we're just we don't want to get burned. And that's something I mean, we may not be in an active negotiation with our employer about that, but it's obviously something that affects us. And we want to be in discussions with our employer about that. Our employer just seems generally insensitive to our injury on the in the workplace, including on assignment. If he would have done something like that, then that would have been right. Because I think it's the tail end of what you added that makes it a dispute, right? That again, just talking about an employee issue is not what the standard is. And it is alerting the third parties that they're that you are in an ongoing labor dispute with your between the employee and employers. That's the that is the standard and that hits on 1 topic that I wanted to raise that again, what I feel is the board's arguments that are left in the case. And 1 of them is related to arguing that mystery testified about employee issues, which the board equates to being an ongoing labor dispute. And if we go back to the 1st, oral argument, and it's around 29 and a half minutes into it. Judge actually asked the counsel for general counsel. You said it relates to employee issues, but isn't the test whether it relates to an employee dispute. Is it enough under Jefferson standard that it just relates to an employee issue? Where is the case where they have applied it to an employee issue? That was not a dispute. And then the board attempted to get into a discussion about direct TV, which judge correctly noted, like, very clearly is about an employee dispute that was ongoing. And the employer itself admitted that the communications that the employees got into there indicated that they were in a dispute with the employees and the employer. But then judge asked the counsel for general counsel essentially a 3rd time that is there a case where there was an employee issue that was not an employee dispute that satisfied Jefferson standard in the counsel for general counsel conceded there are 9. And that's been, we're in the same place, like, 7 years from the court's decision. There has been no case that has come out that says that just talking about an employee issue versus an employee dispute with an ongoing dispute with your employer satisfies the 1st prong of Jefferson standard. Can I ask a question about, I guess we have a case now, because this is it. I'm trying to understand how explicit say, the union member has to be, or the employee has to be about there being a dispute, right? You've hypothesized cases where they come out and say, and we are in a dispute. So, this hearing on core send a witness to. So, imagine this is just definitely not what the on core witness talked about in this case to be clear on the record. But imagine you have a different record where a company witness comes and says. Our new equipment is phenomenal. So easy to use so easy to install. We've been sending out accountants. We don't even need our technicians to go out and install these things safe. Easy way to go needless to say, union members aren't happy with. Technical work, like, there is getting sent out to accountants. So, of course, as that, and then Mr. Reid comes in and says. A lot of what he said here, but sorry, I think he talked about them not fitting into the basis properly. And and the risks of that, and if he adds a line that says that, in fact, trying to jigger it into the base. Can create electrical shocks for the technician. Would that be enough to create a dispute between employer and employee? Would that give enough context to the audience? So, he's not saying, and we have a dispute with our employer about the accountants doing this, but look into the context. The committee, the hearing as a whole, of course, as easy peasy accountants can do it and are doing it. They come in and go now accountants are losing their fingers. These things are shocking people. It's dangerous. And that everyone knows that's going to be, you know, company says, hey, employee comes in and says B. Is that enough to create an issue? I think it gets you closer for sure. That's why I'm asking you whether in your view. Yeah, it definitely I would agree with my friends on the other side that you don't need to use the specific. You know, sort of niceties that maybe a lawyer would say of, you know, this created an ongoing labor. I'm in an ongoing labor dispute with my employer, but I think in something like that. Yeah, I think you're closer to, you know, we're saying that these are great. They're awesome. They're amazing. And, you know. Accountant can do it, and I'm coming in saying the opposite, which is no, they can super dangerous. I think that gets you closer to it being a dispute, like, letting the listeners expertise could decide that that was sufficient, assuming nothing else counteract. Right? Right. I think the, I mean, I think there's been some recent questions in other circuits for sure. Not this circuit as to the level of expertise that the board has on labor law, but, but, but, yes, I think it could probably use. That's some actual evidence in the record to say. Okay, this, this could look like a dispute here could assume this is a dispute. So, had they done that here and gone back and pointed to something and on course testimony, or I don't know who else testified. No, I mean, I think the they didn't because they can't I think I think the so much of what this goes back to with Mr. Reed's testimony is. I think the board does a lot of talking in its decision and in their briefing about what they wish Mr. Reed had said and drawing a lot of inferences from the things that he has said that I just that aren't factual and they don't show how you get to again, using my example. Your honors I read a lot of cases, like, how do you then lead to Amber hates her job and she's in a fight with hunting about wages. It's just there's no context whatsoever that some person in this room could leave and take that from what I said. And that's and that's sort of the, that's the equivalent of what Mr. Reed did. Yes. Did he talk about some things that he does at work? Sure, but did he put someone on notice that I am in a dispute with encore about these things, or the employees are in a dispute with encore about this? No. And and again, I think the board is attempting to create and I think the descent notes this just an entirely new standard, right? Which is sort of like a contextual standard. And I don't think the board, I had proposed a contextual standard and this is 1 of the reasons I asked it because I had read some of your briefing and put in your reply brief to to say, look, we just we look at reads Mr. Reed's testimony. And that's it and I wanted to understand whether that is your view that nothing beyond. The employees last union members testimony can be considered for whether. If it didn't seem like anything that testimony alone, but then you backed out and looked at broader context. That would suffice did you mean to say we're not allowed to look at anything beyond Mr. Reed's testimony? I don't think you can your honor look at broader context unless Mr. Reed brought it to the listeners. That didn't happen in my hypothetical and. Well, I think he's giving some context about we, what they feel about it, or that it's dangerous happens to be. Yes, but that's not a context about a dispute. It's only because I said, and 3 witnesses before company representative testified. And then there's such a conflict between their testimony, which a natural understanding for human beings that. Okay. Well, that's what I think the same page here. And of course, employee safety is right, which I think why my answer and look beyond just the testimony was was equivocating. Basically. Like, I think it gets you closer. I didn't know. I thought he's no, no, I think it gets you. I think it gets you closer. But then what Mr. Reed did my hypothetical now? No, that's not enough. We can only know the employee's testimony. Right? I think you what the standard is and Jefferson standard direct TV in the mountain shadows. It specifically says the communication indicated and again, there's just Jefferson standard. Didn't just look at the content of the words on the bill. It added in the fact that, for example, if the bills had just been handed out on a picket line. That would be a pretty easy inferences. So there's a dispute going on here. There's a picket line, but they had left these bills around town, you know, unconnected to the union or the worker or the picket line. And so Jefferson standard itself went beyond the words on the hand bill and looked at the context of their placement. And the disassociation between that and any type of employee disputes. So, I don't know how you can come back now and say, in my hypothetical that that loses because. If you can only look at the employee's testimony itself, because then you are going to have to require some kind of magic words. Well, I think Jefferson standard addresses that when it says just that, like, the fortuity of a labor dispute does not mean. So there may be something, but that still doesn't mean that you're making the 3rd party aware of because they will leave in these handbills around town. I mean, it just seems to me that we've got Supreme Court precedent looking at more than just the words communicated and deciding whether it conveyed the existence of a dispute or not. And yet you're saying we're only going to look at Mr. Reid's words. Now, it would be 1 thing to say, Mr. Reid's words. Don't do it. And nothing else in the context of that hearing did. Right that I mean, I think that's that's true. Okay. Well, then that's all you need. I think that's true. You don't have to go to you look only at the testimony. So I'm not sure why you would want to fall on that sword because I think it's like, what else would you be. Look, I mean, looking at, I think I think our position is money. I think if you look at the things that the board is trying to rely on, if it's relying on that, there is an email sent regarding smart meters in 2010. I think you could say. That while arguably contextual. Doesn't get you there that, you know, the fact that there were negotiations going on, that still doesn't get you there because again, it's does the 3rd party know what you're saying? So that they can critically filter it. I think it's, it has to be based on what it's reasonably viewed to be part of the communication in the eyes in the ears of the listener. And if there are, there can definitely be items that are beyond nobody listens to somebody talk and says, I'm going to ignore every single thing I know about this person and about why we're here. And I'm only going to listen to the exact words. They say, and then I'm going to forget about everything else. It's necessarily wrapped up in some context. It's just what's fair to take into account as part of the context. And if it's an example, like, judgment has where you have 2 people that are testifying right next to each other. Just seems baked into the testimony, even the words somebody chooses to use are based on what has immediately just been said by somebody else. We wouldn't say and just so you realize it, I'm going to repeat verbatim what this person just said. And then I'm going to tell you how I'm going to assume that you understand that there's a response. I, I don't think it can be that you look purely at the 4 corners of the communication without thinking about the context at all. It's just what's fair to what's fair to think that the listeners would have woven in to the communication that they saw, but I don't think you get to jump to that. The only logical conclusion is opposition that I think it's untrue. Just to say that just because I'm in a union and speaking, I might agree with you on that. Yeah, I just, I just think I just think it's, it strains credulity to think that you would only look at the 4 corners of the communication itself, divorced from the context in which the communication would have been understood by the listener, right? But if you're okay, if you're the listener at the hearing, if you're the media that was there, if you're just the citizen who testified before Mr. Reed, you don't hear what he said. And even if you were there for the. Encores witness who testified, I don't. You don't leave and hear that. Oh, they're in a dispute about and again about what you may well be right about that. I, I guess that that may be true that in this case. Even taking account of the context, you wouldn't view his communication as sufficiently indicating to the listener that there's an ongoing labor dispute. I think the, the point is, though, there could be cases in which. Even if the words themselves in naked. Naked of all context, would it necessarily come out that it's going to be obvious from other things to the listener. That that's going on, just, I mean, Jeff standard, there is a big difference between a bill that's handed out on a picket line and a bill that's, I think, as the court itself referred to it, the left in a barbershop when the person in the barbershop picks up a handbill. They're not going to necessarily know. I mean, it did say it was the workers at the very bottom, but they're not going to know anything about an ongoing labor dispute. If you're handing out a bill on a picket line. Just, I think, and I think here you're testifying at a public hearing about the public safety of smart meters that I don't know. Again, if you are the 3rd party here's that you leave knowing, which is, which is the again, the general counsel's burden to do, they could have brought someone in to say. Hey, I was there, I heard Mr. Reed and I took from it this, or they could have brought in a center to say that you could, you could definitely be right. You might well be right. That in the context of this particular case, the surrounding circumstances wouldn't. Elevate the words that were used in a way that would bring it within the fold of. The 1st prong of the shadows test, but I think that's different from saying you never look outside the words that are used. Yeah, I mean, I think it's hard for to say never for any legal principle. I'm sorry, I was just saying, I don't I did not take your argument to mean that context can never matter. It's just that the context here doesn't support any such. That's exactly where I think that's that's that's that is our position is that the board attempts to use a lot of what the encore 1 called deep background. And again, we're not denying that these things happened. They did. He did receive an email a decade before he testified. He did engage in negotiations the day before he testified. You know, meter base had burn that we dispute the reason for it, but those things happened. But the reality is that we can read Mr. Reed's testimony. And he just, he didn't say that to the listeners, which is the entire point of Jefferson standard is that if you are going to do something seemingly disparaging, make those types of comments about your employer's product or services, put the leaders in the back of your mind. Put the listener on notice of why so that they can filter what you're saying. Right? And your view is nothing about the surrounding context would have alerted a listener to the fact that these facts that you ticked off. It could have been mentioned in fact, were effectively mentioned because they just weren't and you wouldn't immediately think, oh, he's saying this because he sent an e, the same person sent an email X, number of months or years ago. That's just not something that listener would have known unless it was brought to the I think that's correct. And then I also just point out from the case law. I don't believe the board can point you to any case that is going back a decade for context. It's, it's not in any of the cases that Jefferson, because again, here, the union and the employer have a 70 plus year relationship. How far back do you go to say, oh, yeah, yeah, yeah. Well, they had a arbitration in 87 about this. Like, who would know that? And I think that's that's the problem. And that's the failure of the general counsel to not prove their burden on this issue. Well, let's hear unless my colleagues have further questions we can hear from the now and we'll give you a little time. Sometimes you're about to see you. Thank you. She. Morning, your honors may please the board. Thank you. So, Barbara, she, he, for the National Labor Relations Board. I want to start with just making sure that it's clear that the board took up what this with the remand decision asked the court to do the board and said, as instructed by the court. We have thus described the conditions under which a reference to an employer practice could indicate a link to a labor dispute by finding that where an employee identifies himself as a long time employee and a union rep speaking directly on the negative impact of a product on his day to day working conditions and further indicates that he has discussed these changes to working conditions with another union local. The indication prong has clearly been met. That's in footnote 10 of the board's decision and order. So, I just want to highlight that at the beginning, because I do think that indicates very clearly that the board understood what this court asked it to do and it took up that call and it answered the question. I want to start moving on. I think what's written testimonies indicate, say that there is any risk to technicians and installing this testimony. See, there's any risk to the technicians and installing this, these, your honor. He doesn't testify to that and in fact, even if he had, that wouldn't help us now, given the, given the law of the case where that was sort of foreclosed. I think on the remand decision. So, again, what the board is finding is the labor dispute is the change in his working conditions that are related to the smart meters. He testifies the change in working conditions. The changes that he testifies to the work orders, taking up the work orders and then having sorry, I mean, sorry, I stepped away from microphones. How much you spend your time on which job is a change in working conditions? So, so I think actually it's, it's not just that he said that the work orders were changing and the type of work that he was being required to do as a troubleman going out. It's in also the context of the customer experience that there, and I think if we're going to go back and talk about what happened at the prior oral argument, I believe Judge Pillard noted in that argument during the, or during that time that there can be an overlap between the worker's interests and customers. So, again, this also goes to another aspect, I think, of the Jefferson standard test. I'm sorry. Well, funny. Oh, they're implied that there was some sort of pattern of irate customers. Yes, or the, or, I mean, the, the poor technicians, that's just not in his testimony. He references 1. Instance where an elderly widow. Came out and he said, you're going to have to make this payment and her response is well, I've been living here for 45 years and I've ever had a problem until they installed that meter. Is that someone being right? I think it's fair to say I rate. I think disgruntled I think the board also uses the word disgruntled him. I read that is disgruntled at the. Um, at the, at the install that meter, not you until Bay. Well, I mean, it could have been the 2 technicians went out and installed. I don't know that the plural versus singular, but I will say it just I get to go back to my we get briefs all the time. People complaining about past opinions. Maybe that I wrote much less politely than this lady. Am I being harangued? I don't know that I don't I don't know that that's I don't know about whether you're being harangued and this just doesn't seem like a rate. It seems, you know, it could be on, you know. Disappointment unhappy sure nobody wants to pay more money, but it just doesn't feel like this is any way I changed in his working conditions. It's descriptive. I don't I would add at the beginning of what she said. I'm sorry. How where did the board explain how this is anything more than just descriptive of what this woman said that there's unhappy customers out there? Maybe right? I think what the what the happy him or them. Right? No, but I think I think what's significant is not. So what he says, I can't tell you how many times I went out and this is just and then he finishes. So he tells a story and it indicates a very much in a similar way. I think with direct TV, how can't tell you how many times they went out seems actually I don't I don't know who put these paragraph breaks in. Here, but seems to really respond to the prior thing about these work orders are coming in and it's on these meters burning up. Right? But then he, but then he say, how many times I went out on that? Sure. But then he finishes and says, and that has just happened a lot. So, I think that that is, but let's assume it's, it's elderly widow women coming to express their disappointment and having to play that play. I mean, if you want to talk about someone haranguing an employee in a way that, you know, changes materially their job conditions, it's probably not going to be. At least this woman and these. Words that I would reference this, it seems. I don't know how from this factual record, no disputes. This is all he said. I mean, there's not even a freaking exclamation mark after the sentence from describing what she said. So that somehow this was. I mean, if not, they got the poshest customers otherwise in the history of all repair people. I think it's a fair inference to draw from that where the meters are burning up. We know that he said that in his 1st pair in his 1st part of his testimony and then he relays a story. About how he's having to go out and talk to people about there's other testimony about some of the prior in the. In the, in the public hearing that customers didn't want these meters, there's other testimony that people didn't because they were worried about the radio waves. It was not. Did anyone else mention. Any other witness mentioned the meter base is burning up. I, or the meters, I don't, I don't believe so. I don't. It's not their concern about why they didn't want them. They thought they were or communications are going to be monitored or something like that. Right? But if we're talking about sort of disgruntled customers, and he's saying, I'm, they're burning up, I'm going out. My work, my work is changing. I'm having to deal with customers who are upset. Because they are now footing because now I'm going out to repair this and I don't think I don't think it's. An unreasonable inference for the board to have drawn from this testimony that he was relaying a negative experience related to an employment practice that this employer was implementing. He identifies himself also as a union representative. This would be the worst example. I could ever come forward to try to show that someone was irate in her hanging employees. I can't I have the, I have the record that I have. So I know it's a fair inference and I'm saying. But then I think I know, but then, but then let me not an example of her or anyone targeting anything at him. He's saying, and maybe this may be relevant information for this. This is this legislative body. That's hearing this that people don't like have to pay for this. Right and that's that's fine for him to convey that information. It's just. There's limits on him. It's gotta be a limit on when something's a fair inference from absolutely. But this is the, if this sentence is the only evidence in this entire hearing record from any of the, it was a dozen or so witnesses that testified. Of anybody being upset about this burning stuff going on. And she's not even that she's not upset about the burning. She's upset about having to pay for the repair. Right, but that's that does that does go to a change in his job. I mean, he, she's having to pay for repair because the meters are burning up. So it's it is related. And so I do I do think it's difficult. I think. I talked enough here. If that's true, then it wouldn't. Her concern might have nothing to do with either her own safety or the safety of the employee. It could be an annoyance because she doesn't like the company logo. And the idea is. As long as there's some indication to a Senate committee, that's dealing with the safety of the equipment as I understand it. That a trouble man. Might get an annoyed customer for something. Just based on annoyance doesn't have anything to do with safety. Doesn't have it to the customer, let alone to the, to the trouble. Man, as long as there's some connotation that customers of the product. Might be annoyed something. And then the employee can go on and disparage the product as much as they want. And the natural instinct on the part of the listener is, oh, you're talking about. Your relations with the employer, and you're bringing us within the fold of that to help your cause. In a dispute with your employer, because some customers are annoyed for reasons that have nothing to do with the product safety. I think I, I think that what your hypothetical isn't. Including also is that he does identify himself as a union representative at the beginning. I think and I don't discount that. That's actually significant. I think. That is different from Jefferson standard. It's different from mountain. It's different from other. He's not disassociating. There's no anonymity aspect to it. And then there's also the reference to the Houston local. But as to then, I guess we're accepting all of it. But you're also not saying that every time a union member testifies about anything, the fact that they identify themselves as a union member means that everything they say is then. Satisfies prong 1 of Jefferson standard. I don't know that the board takes a position on that. It drops a footnote and says, as the law of the case, we are conducting this analysis under standard. You think it might be the case. That for purposes of the Jefferson standard standard. I know standard standards standards that as long as the person identifies themselves as a union member. Then, virtually in every situation, the 1st prong of the mountain shadows test, if I've got that name, right? Satisfied, I don't know that I'm taking that position that that is a truth. The position that I'm taking is, I don't think the board is by dropping that footnote to say that they are taking Jefferson standard obligation analysis. As law of the case makes me think that the board is reserving on the issue of whether they believe in maybe a different case where it's squarely presented and they're not bound by a remand decision, whether. In front of a governmental body, a union official who identifies himself as such, whether that is sufficient to satisfy the 1st, from certainly not giving them license, then to say anything they want, because let's not forget there's problem too. So, right? But put aside, but I mean, it sounds to me like what you're saying is. As long as a union member identifies themselves as a union member. And then the anything they say thereafter. Can bear in some way on what their workday is like. Including that a customer was upset about something. Then it's protected by that. That's enough of an invocation. That it's an indication to the audience that we need your help in the context of an ongoing labors. I don't think I would say that that I'm characterizing is literally anything that they can say that they can. They can say I wrote briefs today. For instance, I don't I don't think that because that's not this record. What we have here is he does raise issues related to his day to day work. This is what he does every single day. His job is to deal with customers. That has changed. He then says, I also talked to the other union local. So it's not so I don't think it is strictly that. And I think the intended audience here, I think, is quite important. These the board points this out. The intended audience was this legislate with the senators of the Texas legislature. They are very used to being lobby. They understand that witnesses are there to advocate on their own behalf. So, to the extent that we can't lose sight of the purpose of Jefferson standard, which is basically have I given you enough information as the listener to understand that you can either discount my testimony or discount my communication a little bit because of some relationship I have sort of in the background here or is it an enhancement for you, depending on what depending on exactly what the communication is so that I think when understood in that context, where the purpose is just to make sure that the listener takes it with a grain of salt. Understands employees testifying may have an axe to grind in that in that regard. I think the identification of a person as a union representative carries a lot of weight. The board certainly is not hasn't as far as I know, taking the position that that's sufficient, but I think understood in that context with the purpose of Jefferson standard in the forefront indicates that that bar and on top of that, the definition of an ongoing labor dispute is incredibly broad. It's the view that that would be sufficient for someone to simply identify themselves as a union member. Wouldn't that principle be inconsistent with. This court's decision on core, so I'm not suggesting that it was just love the case. What we have to do what you told us to do right now, just in this case, like, the general principles. That are articulated the holding of that case binds the board. I know the board has a. Frequent practice of non acquiescence, but it's not just law of the case, but it could be that if it in a different context, if it was presented, where the general counsel was litigating strictly, I think we are satisfying prong 1 based on this employee identifying themselves as a union representative. And then the and I'm not saying the board is doing that, but if that case were then presented to the board, the board would have the opportunity, notwithstanding this court's decision, because we don't know where jurisdiction is going to lie. We could end up in the 9th circuit or the 5th circuit that the board could take the opportunity in that case to explain why it thinks subject to judicial review, why it thinks it was sufficient in this type of proceeding during given again, it's normally government official proceedings in that context. Is that sufficient to satisfy prong 1 to be clear? The board hasn't done that, but I don't know that this board's remand decision or this court's remand decision necessarily precludes the board from doing that. If that case would it be presented before the board about the remedies here? Sure. So, so where in the NLRA does the board get the authority to impose the remedies that were imposed here? Section section 10C authorizes the board to take affirmative action that effectuates the policies of the act. Affirmative action, but it refers to reinstatement and back pay, and it may not be exclusively reinstatement and back pay, but reinstatement and back pay are equitable remedies. And I think what's been ordered here arguably goes well beyond any equitable remedy. So, 2 responses to that. Your honor is absolutely correct that equitable or that restitute or sorry, reinstatement and back pay are traditionally equitable forms of relief, but they were listed as purely examples in the boards in the board's remedial authority. They're listed as examples that's recognized by the Supreme Court that they don't have destructive significance for purposes of examining the board's authority under 10C. So, so the fact that they're listed, I don't think means it's necessarily just positive. And then on top of that, to the extent that the, to the extent that the Supreme Court has drawn a distinction between legal and equitable relief, it is when it is in the statute when to draw that distinction. And there, there isn't a distinction in this statute drawing a difference between legal and equitable remedies of Article 3 courts, though. I mean, can you give me any example where an agency assumes the authority to impose a remedy that was not. Granted to them by Congress, I mean, because that would be is a creature of statute doesn't have any underlying authority to adjudicate that doesn't come directly from. A statute, right? So the board has to be able to point to something specific that gives it the authority to impose these remedies. Right? And I think. I don't, I don't think quite honestly that the court needs to resolve. I think there's an easier way to resolve whether the board acted within a statutory authority and granting director foreseeable pecuniary harms in that. But I don't think the court needs to decide whether it's equitable or legal and to what extent the board is limited in either pathway, because I think the board, I think the board makes quite clear and it's underlying thrive decision that these types of. Back pay awards are equitable. They are, they, they are ancillary to the thriving and thrive just asserts that it doesn't mean that they're in fact equitable to the 9th circuit. Macy's invite the court to have a look at that. Macy's court does find that they are equitable to be fair and full disclosure. 3rd, circuit did not go in the same way. So, but I don't think the court needs to decide that that this is there's no meaningful distinction between a traditional back pay award and what the board did in thrive. It is at its core is at its core, restoring the conditions to that, which would have obtained, but for the unfair labor practice, it is making employees whole. So, to the extent it is the reason we don't have to decide it. And that is in May, the acting general counsel said, we're going with the dissent in thrive and we haven't had a compliance proceeding here. We don't know if anything other than back pay is going to be an issue in this case. It's not. Absolutely, the board's no longer embracing. Well, other than the beyond what the dissenting opinion did there to be clear that general counsel's memo doesn't have the weight of a board decision. I don't think there's any reason. To believe on the adjudication side of the board that we would be going to get defended in court. General counsel get to decide that. Oh, absolutely. Absolutely. But I mean, they want all day, but they're going to not going to go anywhere. But the board has imposed these thrive remedies in this case. I don't take the general counsel's memo as being retroactively applied to. Right? Right. And I'm here, I'm here prepared to defend. What do you mean? They've imposed it in position happens in a separate compliance proceeding and board cases. Yes, there's been a compliance. There has not your honor. Okay. Do we have any idea? What kinds of claims of remedies are even going to be sought in this case? I would suggest that there's even a preliminary, even easier way not to do it. This I think this claim is jurisdictionally barred. We put that in the brief that not having raised it to the board. So, I think your honor is correct. That there's perhaps a back end. I'm sorry. Would there be remedies that would apply in this case? Review at the end of the process and the separate compliance. Yes, separate compliance. You said the same issue could. Yes, but it would be right. I guess it would be a little bit. It probably would be brought in a slightly different way. I'm assuming that would be related to a specific compliance specification. So, the short answer is, yes, they come to court if they're unhappy with whatever an administrative law judge has ordered in a compliance proceeding. But again, I think what we see here is sort of more akin to like a facial attack on a thrive award. So, the compliance proceeding is just, I mean, just I'm not sure exactly how this works for the board contacts. But, I mean, is compliance proceeding. It's the, I presume figuring out what the damages or what the back pay reinstatement. Actually, like, what the amount is still applying the principle that was in the board's decision, which is that these types of damages are available. Like, is not determining again, whether such remedies are available, they're just determining what amount right? So, under those remedy, right? The employee would come forward with just what amount or what the employee even 6, 6 in that case. I'm sorry, I'm sorry. It's not just the amount is what is the, what is the damages? Right? The employee comes forward in the region. Mr. Reid said the only thing I mean, I had my full time job at the union. The only thing I want here is back pay. Yes, I don't even want to reinstatement at this point. So, if all he wants is back pay, that's all that's all it would be about. And we don't know what he wants. Do we? I do not know. No, it's not in the record. No, because we're not there yet. Right? I don't know. I don't know how you can have facial attacks under this scheme here because they're not remotely. Right. We don't know that anything is going to be sought in this case or awarded in this case. That isn't. Something is anything beyond back pay. That's correct. The general counsel here, though, in bringing the case to the board suggested that these are the remedies that are appropriate. No, I don't think that that's I don't think that's fair. Because what happened here is the board in thrive standardized what had been sort of a more ad hoc view of these types of what are now being called direct foreseeable pecuniary harms. So, it wasn't new. There were other instances. In fact, in this court, this court recognized in King Super's a type of award like this, which was interim job searching expenses. So, it hasn't always just been back pay. So, what the board did is harmonize all of that, standardize all of that and thrive. And here, the general counsel is only seeking what is now the standard remedy, which is for now what we're reading in the board decisions is make whole relief to include direct or foreseeable pecuniary harms. But that is not a suggestion by the general counsel that he or she believed that in this case, there was a whole menu of director foreseeable pecuniary harms that we've never seen before. Outside of just back pay, it's just they're seeking the standard remedy. That is now what the board has no longer the standardized remedy after the memo. Is that right? Or. That I'm not, I don't, I'm not sure about that because the memo again, it's the board who issues the order. The general counsel is seeking the remedy. So, I suppose if that I think we'd have to wait to see the board actually do something with the general counsel's recommendation for the prosecution. If that makes sense, I think we'd have to wait to see that, but there's been no board decision adopting the reasoning of this may memo from the general counsel. No, because we don't have a quorum. The board doesn't the board doesn't have a quorum right now. So, um, there, there haven't been decisions that have issued recently. No. My colleagues and have additional questions. Thank you, your honors and again, we'd ask for full enforcement of that board's decision. Thank you, Ms. Sheen. May it please the court. Mr. Gillespie. This is a very important case. Prong 1 of Jefferson standard to some degree at the most important points in a union's life. Tell us unions, whether or not their leaders can do things. Bobby Reed, he's here today. He's older now. He's he is. He's retired now, but after being fired, he stayed on for a while as a business representative. Mr. Gillespie said, before we get to the merits, could you tell me why the union has standing to intervene in this case? So, the, I mean, so, so the board ruled against encore. And so, so, where does the, why does the board have standing for intervening? On behalf of the union was the charging party and when you're the charging party in a case. Um, then then then at the hearing at the hearing. I guess I was a lawyer. The union is there. And the union takes part and the union actually takes part in the exceptions process that goes on to the board. And then and then if there is an appeal or basically what we've got now a position for for review and a position to enforce the union is commonly it is it is a necessary party below. I understand that that union has interests in the outcome of this case, right? But that's not sufficient for article 3 standing and intervenors have to have article 3 standing. So, there has to be an injury that has to be caused by the party by the party that's being sued. There has to be redress ability. I mean, what would we do that could help the union the union effectively prevails before the board? The union has, I mean, right now, a living example of what can happen to you if you get up and stand in front of a Senate committee and testify on behalf of the union. And we've had several times opposing council keeps referring to Bobby Reed is saying I'm a union member. He didn't say that. He said, he said, I'm the board agreed with you. I. B. W. 69. I'm sorry. So, where's the injury though from the decision below? In what, where is your standing? The standing is that we oppose what the. Encore, they responded or the petitioner is seeking. We weren't injured by the board's decision. We, we favor the board's decision. We would be injured if the. Court of appeals rules in favor of encore. We would be injured. We then the, the entire. Section 7 of the NRA is designed to protect union members when they exercise what were called section 7 rights. 1 of the fundamental section 7 rights is to appeal to a legislator. There's Supreme Court authority on that. That's what Mr. Reed was doing. And this case actually touches on a couple of really huge things. Your honor, you wrote the direct TV decision years ago. That decision, if you look at it, there were 33 words. That were said to the press and 3 statements. 3 technicians each had 1 statement totals up to 33 words and it was clearly a prong 1. Yes, prong 1 was met. There was a connection to a labor dispute. The question in this case, I think we know that the burden is not or onerous. The word I used to be able to say and that there are no magic words required. So, the question, and I think you've already focused on that is, did the committee get it? Were they in a position to understand what was going on? Well, you had Mr. Moore on behalf of Encore sit there and say, smart meters are great. They're wonderful. Let's let's let them go forward. And you had Bobby Reed who didn't sign up as a union member. I'm sorry. He is a union member, but he signed up self and IBEW union local 69. and then he testified I am the union representative in Dallas and all over the state. Talking about Texas, and he testified about how he contacted the Houston local to to deal with this issue. The smart meter issue, the fact that they were causing problems. They were, they were burning up. That's the vernacular they used. In fact, there was a technical issue. The meter bases themselves would overheat and that caused a problem. Your honor, you ask a series of fabulous questions. I think I'm not trying to schmooze up to you much, but I make a parallel analogy. My wife was a flight attendant for 36 years. My son is a flight attendant for 22 years right now. And I know that flight and I represent them union flight attendants. And I know that that 1 of the issues they have on the airplane is when they deal with an unruly, unhappy customer, they don't have to be super unhappy, but it's a bad part of the job. It's a tough part of the job. It's something that is part of the job. It is a working condition. So, when you go out and tell someone your meter base is part of your property, and in order for you to get your lights back on. You've got to you've got to pay the money 1000, 2000 dollars, or else your lights can't come back on and the board can reasonably infer that that that would be a disgruntled. A disgruntled customer, and that that's a working condition and your honor, you wrote the decision and Ozzie. I always have a hard time saying this when Ozzie has the logistics LLC, not a prong 1 case, but it is a case dealing with the substantial evidence review and in dealing with that case, your honor said we owe substantial difference to inferences drawn by the board from the factual record here. The factual record does include context. That's the other issue. That is huge. And what I heard, I know, so I want to say this. I heard counsels for encore several times say that still doesn't get you there. Well, my goodness, what you got to get there. I mean, if you're the head of the union, and you go to Austin, Texas, testify, and you sign up and you say things that the employer doesn't like so much that they're enraged at you and they fire you, they don't use progressive discipline. They take someone with a perfect record, an unblemished record and fire that man. And here we are, 12 years later, and he's still fired. We need a remedy. Thank you. Thank you. Thank you. Council. I'm sure my colleagues have additional questions for you. Thank you. Striders will give you 3 minutes for rebuttal. Just a couple of brief points. 1, the, it was raised about the 4 elderly widow woman who has somehow over these years morphed into a disgruntled and irate person. And it's just, again, there's no record evidence of this. There is there's no record evidence that encore and its employees were in any dispute about irate and disgruntled. Customers, and I may have said this on on my 1st comments, but again, this was brought up in the 1st oral argument and judge ask, is there any evidence that within a year of the Senate hearing? That the unit was excuse me, the union was lobbying over employees, having to put up with angry customers and the effect that has on their work environment within a year of this hearing council for general counsel's response. No. Um, and, uh, regarding. Um, the issue of Mr. Reed's position with the union again, it's undisputed. That is the role that he had. He was the union's business manager and financial secretary, but neither the board nor the union can point this court to any case law that says that means. That satisfies Jefferson standard that it's true and I think there's a confusion that they're mixing up section 7 rights with section 10, C, which is what Jefferson standard is looking towards of whether or not you have to bring back an employee who was was terminated for for cause. So, again, they can't point this court to any, any case law board law, circuit court, or Supreme Court law that says that simply being a union member, or the union president or steward, or whatever position means that that is indicating a labor dispute. I would, in fact, say it's goes as far as I think the. It's the board, you know, for lack of a better phrase, letting it slip show that that there's a fundamental belief right with the board, which I think is diametrically opposed to the National Labor Relations Act that the union and the employer always opposed to each other. And that's just not true. The entire purpose of the is to have labor peace in the majority of the time. Employers and employees are actually not in a dispute. They have a collective bargaining agreement and that's why. So, I think the fundamental presumption that the board rest on that just being in a union somehow indicates a dispute is just factually and legally untrue. I'm sorry to interrupt the 1, but she gets to make your points. I just had a quick question though, and you may not know this, but is there does Texas have whistleblower protections that would apply separate and apart? So, if you weren't in a dispute with the employer, but you wanted to reveal that there was some danger to a product. That would provide that protection, or is the theory that the. Court is advancing here is when union members need to go complain about something inside the company to legislators. We are that has to be protected for reasons, Texas, I believe does have a whistleblower act and then there there is some state case law. Regarding it's basically called a subpoena being pilot doctrine after the name of the case where an employee can. If they were terminated for violating. So, not for some discriminatory reason, but because your employer actually violate the law somehow, you can bring a cause of action that way. I don't need to take you up on that. No, no, no. I understand how at some point it seems. You know, if the board's concern here is that. Whether it's within their wheelhouse or not is another question, but. Union members need to be able to complain about dangerous products. There may be another other schemes for dealing with that. Well, and I think. I wouldn't say our position is against that. I think again, that goes to a section 7, right? Which this court did decide that he was engaged in section 7 activity when he when he testified. That's a different question. Then a 10 section 10 C question that Jefferson standard is trying to to get to, I think union members. Can go to to 3rd parties if they want to to to advocate, but again, that's where Jefferson standard swings in and says, if you're going to do that in a disparaging way, then you need to put that the 3rd party on notice that you're in an ongoing labor dispute, which, which 1 of the last points that I'll make here is, I think again, the board and the union are attempting to. Graze over facts, right? That didn't say that. Well, he really the main audience is the Senate and that's what's really important. You just ignore everybody else. No case law says that the audience was the audience. The audience was saying we look at the target with the target target audience. I mean, that's from us. Can't blame the board on that. But the other people, I think the other people, the target to its board here found that the target was the legislator legislatures themselves. Well, because it's convenient for them to find that, but it's, but it's ignoring. I'm not sure. That's a fair point. I mean, we have said, we look at this, you know. How would the target audience have understood what was being said? We've used that phrase target audience. And so the board had to figure out who the target audience of this statement was affected. Other people can hear if it was anyone who can hear us. We wouldn't have said target audience. Well, I think it's you're at a Senate hearing about the public and the public is there. They're a part of the target audience had understood. Let's just imagine they had a secret code, you know, that was all unions new and all legislators knew that when a union member comes up and says, bingo, then I am telling you about a problem we have with our employer. But we don't always want to wash all the dirty linen and public. So they come up and say, bingo target audience gets it. You're telling us about dispute. You have a dispute. Our case law says we consider how the target audience would have understood it. That would be satisfied and that wouldn't work out for us. But yeah, but I think again, even okay, if we focus on the Senate being the target point, and there's a public there that have the product, but that's just. That is, it may we have a target audience, right? And even if the Senate, the Texas Senate is the target audience, they still they were still told the same things and they still weren't told all of this background contextual things that again, we admit happened, but they weren't they weren't told these things. Let me make sure my colleagues don't have any additional questions at this point. And thank you counsel. Thank you all counsel. We'll take this case under submission.
judges: Srinivasan; Millett; Rao